UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
WINCHESTER DIVISION

| | |
|---|---|
| RIVKA C. STEINBERG, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:17-CV-9 |
| | ) |
| LUEDTKE TRUCKING, INC., | ) |
| | ) |
| Defendant. | ) |

# **MEMORANDUM OPINION**

This matter is before the Court on Defendant's Motion for Summary Judgment [doc. 63], Defendant's Brief [doc. 64], Defendant's Statement of Undisputed Facts [doc. 65], Plaintiff's Response [doc. 69], and Defendant's Reply [doc. 70]. For the reasons herein, the Court will reserve ruling on Defendant's motion in part and deny the remainder of the motion.

## I. BACKGROUND

After attending the Bonnaroo Music and Arts Festival in Manchester, Tennessee, Plaintiff Rivka C. Steinberg traveled with her friends to a truck plaza alongside the interstate. [Pl.'s Dep., doc. 69-1, at 17:2–13].[1] They decided to camp out in a field behind the truck plaza for the night. [*Id.* at 17:12–13]. Ms. Steinberg's friends offered a bottle of beer to her, and as she consumed it, she became dizzy, lost control over her body, and blacked out. [*Id.* at 17:13–16; 18:13–19, 22–24].

---

[1] Pincites to the record refer to the electronic page numbers.

During that same night, Mr. Randal Luedtke, a commercial truck driver, was en route to Tennessee from Florida, and when he arrived in Tennessee, he pulled his tractor-trailer into the truck plaza in Manchester—the same truck plaza where Ms. Steinberg was present for the night. [Luedtke Dep., doc. 65-1, at 46:15–25; 47:1–8]. He slept for several hours in his truck. [*Id.* at 48:24–25; 49:1–2]. When he woke at 3:00 a.m., he completed paperwork, and around 6:00 a.m., he placed his truck in gear. [*Id.* at 51:3–18]. According to his account, he backed up to reposition his truck into a "nice spot," [*id.* at 51:23],[2] planning to "go inside the truck stop and get some coffee, use the restroom, and do a pre-trip inspection before hitting the road," [Def.'s Undisputed Facts at 2].

The sound of the moving truck stirred Ms. Steinberg to consciousness—at which point she realized that she was not in the field anymore but, somehow, was now lying underneath the rear of Mr. Luedtke's truck. [Pl.'s Dep. at 17:17–18; 20:11–15]. As the truck's rear tire approached her, she was unable to avoid it, and it ran over and mangled her leg. [*Id.* at 17:17–21; 20:11–15, 17–18]. After hearing a noise, Mr. Luedtke looked in his side-view mirror and, for the first time, saw Ms. Steinberg "sitting on the roadway back there, which [he] didn't know was a roadway." [Luedtke Dep. at 52:2–4].[3] He phoned 911, and she was airlifted to a hospital, where she had emergency surgery on her leg. [*Id.* at 52:19–24; 53:23; Pl.'s Dep. at 34:21–25; 35:1–9]. She was hospitalized for more than a month. [Pl.'s Dep. at 35:22–25].

---

[2] Mr. Luedtke testified that a more attractive parking space had become available in the truck plaza, so he "was just going to move over." [Luedtke Dep. at 24:10–12].

[3] Mr. Luedtke testified that "trucks come around from the tire shop back there." [*Id.* at 21:18–19].

Ms. Steinberg now believes that the beer she drank that night might have been laced with a drug, possibly a "roofie." [*Id.* at 18:1–5]. Between drinking the beer and regaining consciousness underneath Mr. Luedtke's truck, she has no memory of anything that happened. [*Id.* at 18:22–24]. She has "no idea" how she went from being in the field to lying under the truck. [*Id.* at 19:3–5]. And on the morning of the incident, she could not locate her friends, who had apparently vanished. [*Id.* at 19:6–18].

Ms. Steinberg now brings suit in this Court against Defendant Luedtke Trucking, Inc., claiming that through Mr. Luedtke, its employee and agent, it had a duty to ensure that "there were no hazards presented to others" before he operated his truck on the morning of the incident. [Am. Compl, doc. 43, ¶ 8]. Her claims against Luedtke Trucking include one for negligence and one for negligence per se. [*Id.* at 3–4]. Luedtke Trucking now moves for summary judgment.

## II. LEGAL STANDARD

Summary judgment is proper when the moving party shows, or "point[s] out to the district court," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), that the record—the admissions, affidavits, answers to interrogatories, declarations, depositions, or other materials—is without a genuine issue of material fact and that the moving party is entitled to judgment as a matter of law, Fed. R. Civ. P. 56(a), (c). The moving party has the initial burden of identifying the basis for summary judgment and the portions of the record that lack genuine issues of material fact. *Celotex*, 477 U.S. at 323. The moving party discharges that burden by showing "an absence of evidence to support the

nonmoving party's" claim or defense, *id.* at 325, at which point the nonmoving party, to survive summary judgment, must identify facts in the record that create a genuine issue of material fact, *id.* at 324.

Not just any factual dispute will defeat a motion for summary judgment—the requirement is "that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it may affect the outcome of the case under the applicable substantive law, *id.*, and an issue is "genuine" if the evidence is "such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In short, the inquiry is whether the record contains evidence that "presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. When ruling on a motion for summary judgment, a court must view the facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. A court may also resolve pure questions of law on a motion for summary judgment. *See Hill v. Homeward Residential, Inc.*, 799 F.3d 544, 550 (6th Cir. 2015).

### III. ANALYSIS

In requesting summary judgment, Luedtke Trucking argues that it did not owe a legal duty of care to Ms. Steinberg as a matter of law and that the record shows it was not the proximate cause of her injury. [Def.'s Br. at 9–21]. Luedtke Trucking also contends

4

that under the doctrine of comparative fault, no reasonable jury could conclude that it was more than fifty percent at fault for Ms. Steinberg's injury. [*Id.* at 21–24].

Before the Court begins its analysis, it will address a fervently contested issue between the parties: whether the record shows, beyond a genuine issue of material fact, that Mr. Luedtke inspected his truck or the area surrounding it before reversing it. The parties' dispute on this issue centers mostly around whether Mr. Luedtke performed a pre-trip inspection, [Def.'s Br. at 20–21; Pl.'s Resp. at 6; Def.'s Reply at 4]—a type of inspection he conducts before retaking the road, [Luedtke Dep. at 5:10–15, 29:2–5]. This inspection includes, among other things, a walk-around of the truck, a checkup of the tires to ensure they are free from obstructions, and an examination of the area underneath the truck for leaks. [*Id.* at 6:25; 7:1–3; 30:10–22].

But Ms. Steinberg also appears to contend that Mr. Luedtke breached a legal duty because he performed no inspection at all—pre-trip or otherwise—before moving the truck: "Mr. Luedtke violated accepted industry standard . . . by failing to conduct *any* inspection prior to moving the truck. [B]acking a 64 foot tractor trailer without visually inspecting the area is a violation of due care." [Pl.'s Resp. at 10 n.53 (emphasis added) (quoting Philbrick Decl., doc. 69-6, ¶ 21)]. In this vein, Ms. Steinberg contends that the record shows Mr. Luedtke did not exit the cab of his truck for any reason in the hours leading up to the incident. [Def.'s Resp. at 6]. Mr. Luedtke, however, argues that "[t]here is simply no evidence that the Defendant ever left the truck stop without doing a pre-trip inspection." [Def.'s Reply at 4].

5

Although the record is unclear as to whether Mr. Luedtke performed a pre-trip inspection before leaving the truck plaza for good, it is clear that he performed no inspection of any kind before reversing his truck onto Ms. Steinberg's leg. Mr. Luedtke testified that, except maybe to use the restroom, he did not recall exiting his cab between the time he parked his truck in the evening and the time he repositioned it the following morning. [Luedtke Dep. at 23:11–17]. He also admits that he did not perform a pre-trip inspection between this timeframe and instead planned to do it after he repositioned his truck. [Def.'s Undisputed Facts at 2]. The record therefore establishes, beyond a genuine issue of material fact, that Mr. Luedtke did not inspect his truck or the area around it before reversing it and injuring Ms. Steinberg.

### A. Negligence: Legal Duty of Care

As a general rule, people have a duty to refrain from acts that would create an unreasonable risk of harm to others. *Satterfield v. Breeding Insulation, Co.*, 266 S.W.3d 347, 355 (Tenn. 2008).[4] Negligence is conduct that violates a person's duty to exercise reasonable care to avoid acts that create an unreasonable risk of harm to others. *Banks v. Elks Club Pride of Tenn. 1102*, 301 S.W.3d 214, 226 (Tenn. 2010). To establish a negligence claim, a plaintiff has to show that (1) the defendant owed a legal duty of care to him; (2) the defendant breached that duty of care by engaging in behavior that fell below the applicable standard of care; (3) an injury or loss; (4) cause in fact; and (5) proximate cause. *Giggers v. Memphis Hous. Auth.*, 277 S.W.3d 359, 364 (Tenn. 2009).

---

[4] This general rule "reflects society's contemporary policies and social requirements concerning the right of individuals and the general public to be protected from another's act or conduct." *Bradshaw v. Daniel*, 854 S.W.2d 865, 870 (Tenn. 1993) (quotation omitted).

Luedtke Trucking argues it is entitled to summary judgment on Ms. Steinberg's negligence claim because Ms. Steinberg cannot establish the first element—that it owed her a duty of care. [Def.'s Br. at 12]. According to Luedtke Trucking, Ms. Steinberg is trying to establish a legal duty "that would require a person operating a vehicle to look underneath it to see if there are any sleeping human beings," and "no precedent could be located under Tennessee law . . . establishing that such a duty exists." [*Id.* at 15–16]. To buttress this argument, Luedtke Trucking also points out that in Tennessee "[n]o law prohibits a truck driver from repositioning his truck to properly conduct a pre-trip inspection." [Def.'s Reply at 4–5]. Ms. Steinberg responds by entreating the Court to reject Luedtke Trucking's argument, faulting Luedtke Trucking for casting the duty at issue in this case in overly "narrow terms" and overlooking "the broad scope of duties imposed on operators of commercial motor vehicles" in Tennessee. [Pl.'s Resp. at 9].

A "duty is the legal obligation owed by defendant to plaintiff to conform to a reasonable person standard of care for the protection against unreasonable risks of harm." *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995) (citations omitted). The issue of whether a defendant, in a particular situation, owes a duty to a plaintiff is one of law for the Court, which it "determine[s] by reference to the body of statutes, rules, principles, and precedents which make up the law." *Jones v. Exxon Corp.*, 940 S.W.2d 69, 71 (Tenn. Ct. App. 1996) (quoting *Bradshaw v. Daniel*, 854 S.W.2d 865, 870 (Tenn. 1993)). In Tennessee, longstanding precedent places a duty on drivers "to keep a reasonably careful lookout commensurate with the dangerous character of the vehicle and

the nature of the locality." *Hale v. Rayburn*, 264 S.W.2d 230, 233 (Tenn. Ct. App. 1953) (citations omitted).

This duty applies equally to commercial truck drivers like Mr. Luedtke—who testified that he struck Ms. Steinberg as he reversed his truck onto "the roadway" behind the truck plaza. [Luedtke Dep. at 52:2–4]; *see* Tenn. Code Ann. § 55-8-136 ("[E]very driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway[.]"); *id.* § 55-8-163 ("The driver of a vehicle shall not back the vehicle unless that movement can be made with reasonable safety[.]"); *see also id* § 55-8-101 (defining the term "vehicle" as "*every* device in, upon or by which any person or property is or may be transported or drawn upon a highway" (emphasis added)); *cf. Erosion Control Corp. v. Evans*, 426 S.W.2d 202, 207 (Tenn. Ct. App. 1967) (indicating that the duty that the court previously identified in *Hale* applied to the facts of the case at hand, which involved a driver of a three-ton flatbed truck).

So although Luedtke Trucking is correct in its assertion that in Tennessee "[n]o law prohibits a truck driver from repositioning his truck to properly conduct a pre-trip inspection," [Def.'s Reply at 4–5], Mr. Luedtke was nevertheless under a duty, when he did reposition his truck, "to keep a reasonably careful lookout commensurate with [1] the dangerous character of the vehicle and [2] the nature of the locality," *Hale*, 264 S.W.2d at 233 (citations omitted). Whether he *breached* this duty by not keeping a reasonably careful lookout through his actions—i.e., through [1] his decision to back his truck before inspecting it or the area around it, [2] while in a semi-dark public place in the twilight hours—is not an issue that Luedtke Trucking addresses with any specificity

in its motion.[5] The Court will therefore reserve it for the jury's consideration. *See Rains v. Bend of the River*, 124 S.W.3d 580, 588 (Tenn. Ct. App. 2003) (providing that the breach of a duty is an issue that a jury must ordinarily consider unless the evidence is uncontroverted and allows for "only one conclusion" (citations omitted)).[6]

### B. Negligence: Proximate Cause

Luedtke Trucking next argues that it is entitled to summary judgment because the record lacks a genuine issue of material fact as to the last element of Ms. Steinberg's negligence claim—proximate cause. [Def.'s Br. at 11–17]. The term "proximate cause" is something of a misnomer in tort law because, in a negligence case, proximate cause has more to do with the scope of a defendant's liability than with the actual cause of a plaintiff's injury. *See generally King v. Anderson County*, 419 S.W.3d 232, 246 (Tenn. 2013) ("Proximate cause focuses upon 'whether the policy of the law will extend responsibility for that negligent conduct to the consequences that have occurred.'" (quotation omitted)); Kenneth S. Abraham, *The Forms and Functions of Tort Law* 125 (3d ed. 2007) (commenting that use of the term "proximate cause" is "unfortunate and misleading" and describing proximate cause as "'a scope of liability' issue"). At its nub, it is simply a question of whether a plaintiff's injury is the reasonably foreseeable likelihood of a defendant's alleged negligent conduct. *Moody v. Gulf Ref. Co.*, 218

---

[5] Mr. Luedtke merely contends that "[b]ecause the Plaintiff cannot establish a duty owed, the Plaintiff cannot establish a breach of duty," without mustering any additional argument on the issue of breach. [Def.'s Br. at 17]. The Court rejects this barebones contention, having determined that Mr. Luedtke did indeed owe a duty to Ms. Steinberg.

[6] Incidentally, Ms. Steinberg's evidence shows that Mr. Luedtke, when he reversed his truck without first inspecting the area around it, had a "blind spot . . . in his field of vision using his mirrors alone." [Philbrick Decl. ¶ 21 (footnote omitted)].

9

S.W. 817, 819 (Tenn. 1919); *Tedder v. Raskin*, 728 S.W.2d 343, 348–49 (Tenn. Ct. App. 1987).

Under Tennessee law, proximate cause—which is "a jury question unless the uncontroverted facts and inferences to be drawn from them make it so clear that all reasonable persons must agree on the proper outcome," *McClenahan v. Cooley*, 806 S.W.2d 767, 775 (Tenn. 1991) (citations omitted)—consists of three elements:

> (1) the tortfeasor's conduct must have been a "substantial factor" in bringing about the harm complained of; (2) there is no rule or policy that should relieve the wrongdoer from liability because of the manner in which the negligence has resulted in harm; and (3) the harm giving rise to the action could have reasonably been foreseen or anticipated by a person of ordinary intelligence and prudence.

*Id.* (citations omitted). Luedtke Trucking contests the third prong, foreseeability, arguing that a reasonable truck driver could not have anticipated Ms. Steinberg's injury. [Def.'s Reply at 5].

### 1. Foreseeable Harm

The risk of an injury "is foreseeable if a reasonable person could foresee the probability of its occurrence or if the person was on notice that the likelihood of danger to the party to whom is owed a duty is probable." *King*, 419 S.W.3d at 248 (quotation omitted). Although courts must assess foreseeability from the perspective or "vantage point" of a reasonable person, *Cadorette v. Sumner Cty. Bd. of Educ.*, No. 01A01-9510-CV-00441, 1996 WL 187586, at *3 (Tenn. Ct. App. Apr. 19, 1996) (quotation omitted)—that is, from the perspective of a person possessing ordinary intelligence and prudence—it has nothing to do with intent or state of mind, *Johnson v. Smith County*, No. M2005-

02738-COA-R3-CV, 2006 WL 3044156, at *2 (Tenn. Ct. App. Oct. 26, 2006). Rather, it is an objective test, concerning whether an injury was probable to a reasonably prudent person in the defendant's shoes, or in other words, at the time of the alleged negligent behavior. *See King*, 419 S.W.3d at 248 ("Foreseeability must be determined as of the time of the acts or omissions claimed to be negligent." (citation omitted)).

In contesting the element of foreseeability, Luedtke Trucking primarily concerns itself with the circumstances leading up to Ms. Steinberg's injury—namely her mysterious, unexplained migration from the field to the rear of the truck—referring to them as improbable. [Def.'s Reply at 5]. According to Luedtke Trucking, "[a]n event as unequivocally unprecedented as is the one at issue in this case clearly could not have been anticipated by an ordinary [truck driver]." [*Id.*]. And more specifically, it maintains that "[i]t is simply not foreseeable that [Ms. Steinberg] would become intoxicated and travel some 100 yards from a field that she was sleeping in to pass out under a semi-truck." [Def.'s Br. at 16]. In response, Ms. Steinberg argues that the fact that she "is unable to fully account for how she ended up beneath Defendant's tractor trailer does not render her injury unpredictable or unforeseeable." [Pl.'s Resp. at 14–15].

While the circumstances may indeed be unusual, "[t]he fact that an accident may be freakish does not *per se* make it unpredictable or unforeseen." *McClenahan*, 806 S.W.2d at 775 (quotation omitted). "The foreseeability requirement is not so strict as to require the tortfeasor to foresee the exact manner in which the injury takes place," requiring him to anticipate only "the general manner." *Id.* (citation omitted); *see Shell Oil Co. v. Blanks*, 330 S.W.2d 569, 546–47 (Tenn. Ct. App. 1959) (recognizing that so

11

long as a defendant can anticipate "harm in the abstract," as opposed to "the precise manner in which an injury ultimately results," foreseeability exists (internal quotation marks and quotation omitted)). In this particular case, Luedtke Trucking's depiction of the facts as "unequivocally unprecedented" would at least appear to suggest that the issue of foreseeability is not "so clear that all reasonable [jurors] must agree on the proper outcome." *McClenahan*, 806 S.W.2d at 775 (citations omitted).

In this vein, jurors "decide negligence cases 'in light of their knowledge of how reasonable persons act in the same or similar circumstances.'" *Cadorette*, 1996 WL 187586 at *3 (quotation omitted); *see King*, 419 S.W.3d at 248. Mr. Luedtke testified that the time of the incident, 6:00 a.m., was one of bustle in the truck plaza because "at that time, everybody's moving." [Luedtke Dep. at 24:16–77]. He also testified that he instructs Luedtke Trucking's drivers about the importance of walk-arounds and checking tires because "[y]ou never know what you find." [*Id.* at 7:24]. Along similar lines, he recognized that pedestrians might frequent the parking lots of truck plazas. Specifically, he testified that "lot lizards," a "trucker term of a prostitute," have been known to linger in the parking lots of truck plazas, though their presence is less common now than in the past. [*Id.* at 32:12–21; 33:22–25; 34:1–9]. All of this evidence, directly or indirectly, lays groundwork for the jury's deliberation of foreseeability because it establishes their knowledge of the circumstances under which Mr. Luedtke acted, and their knowledge of how a reasonable truck driver might have acted under similar circumstances. *Cadorette*, 1996 WL 187586 at *3; *see King*, 419 S.W.3d at 248.

When viewing this evidence and drawing all reasonable inferences in the light most favorable to Ms. Steinberg, the Court believes a reasonable jury could decide that the injury in this case—one stemming from a collision between a truck and a person—is the *general* type of harm that a reasonable truck driver could have foreseen by reversing his truck without inspecting the immediate area. The Court, however, stresses that its reasoning does not extend beyond the facts of this case. Several facts *specific* to this case have been integral in shaping the Court's opinion, including (1) the increased activity at the truck plaza at 6:00 a.m.; (2) the fact that the vehicle involved in the incident was a multi-ton—and potentially unwieldy—tractor trailer;[7] (3) Mr. Luedtke's emphasis on the need for truck drivers to perform walk-arounds; (4) the fact that Mr. Luedtke created a blind spot by moving his truck in reverse rather than moving it forward; (5) the fact that he was reversing his truck in a public place, from a parking lot to a roadway; (6) the fact that he was operating in the semi-darkness of the twilight hours, when visibility was likely poor; and (7) of course, his failure to inspect the area around his truck despite all these circumstances. Again, a reasonable jury could find that a reasonable truck driver in the same or similar circumstances could have foreseen the type of harm that occurred—not necessarily in the "exact manner," *McClenahan*, 806 S.W.2d at 775 (citation omitted), but at least "in the abstract," *Blanks*, 330 S.W.2d at 546–47 (internal quotation mark and quotation omitted).

---

[7] On the day of the incident, the trailer was not empty but was carrying freight, or as Mr. Luedtke put it, he "was underneath a load." [Luedtke Dep. at 20:25].

## 2. Intervening Cause

Luedtke Trucking fails to persuade the Court of its position partly because it inexactly frames foreseeability in terms of "intervening cause." [Def.'s Br. at 12]. "The intervening cause doctrine is a common-law liability shifting device. It provides that a negligent actor will be relieved from liability when a new, independent and unforseen cause intervenes to produce a result that could not have been foreseen." *Godbee v. Dimick*, 213 S.W.3d 865, 883 (Tenn. Ct. App. 2006) (quotation omitted). In relying on this doctrine, Luedtke Trucking maintains that the events that led to Ms. Steinberg's injury—her sojourn in the field, her possible ingestion of a roofie, and her displacement to a location roughly a hundred yards away at the truck's rear—were intervening causes that "broke[] the chain of proximate cause by establishing that the Plaintiff's injuries were not foreseeable." [Def.'s Br. at 12; *see id.* at 16–17].

Although an intervening cause—whether an act by a third party or a force of nature—can splinter "the idea of continuity" that is necessary to bridge a defendant's negligent conduct to a plaintiff's injury, *Pierce v. United States*, 679 F.2d 617, 622 (6th Cir. 1982) (quotation omitted), an act is not an intervening cause unless it occurs *after* negligent conduct, *see McClenahan*, 806 S.W.2d at 775 (noting that an intervening cause is "created" by a negligent act (citation omitted)); *cf. Anderson v. Mehaidli*, No. 94-2127, 1996 WL 196219, at *4 (6th Cir. Apr. 22, 1996) (providing that "[a]n intervening cause is one which comes into active operation in producing harm to another *after* the negligence of the defendant" (emphasis added) (quotation omitted)). Because the events

that Luedtke Trucking describes as intervening causes occurred not subsequent to but before Mr. Luedtke's alleged negligent conduct, they are not intervening causes.

The Court ends its analysis by evoking a felicitous analogy. A famed scholar, the late Karl Llewellyn once likened legal rules to a golfer's chipping game, which can help to get a golfer's ball onto the green. Karl N. Llewellyn, *The Bramble Bush* 52 (Quid Pro Books 2012) (1930). But putting the ball into the hole requires more—an application of the law to the facts. *Id.* In this case, the legal standard governing summary judgment, as it applies to the record, is enough to get Ms. Steinberg's ball onto the green. From here, the Court's task is done. A jury must do the putting by applying the law of negligence to the facts as they see them, as is often true in negligence cases. *See Moody*, 218 S.W. at 819 ("The general rule is that what is the proximate cause of an injury is a question for the jury; the court instructing them as to what the law requires to constitute it, and the jury applying the law to the facts.").

### C. Negligence Per Se

Luedtke Trucking also requests summary judgment on Ms. Steinberg's claim for negligence per se—a doctrine under which a defendant can be negligent as a matter of law, or per se, for violating a statute or regulation that promotes safety. *See Whaley v. Perkins*, 197 S.W.3d 665, 672–73 (Tenn. 2006). A claim for negligence per se has three elements: (1) the violation of a statutory or regulatory duty of care; (2) a showing that the statute or regulation was meant to benefit and protect the injured party; and (3) proximate cause. *Chase, Jr. v. Physiotherapy Assocs., Inc.*, No. 02A01-9607-CV-00171,

15

1997 WL 572935, at *5 (Tenn. Ct. App. Sept. 5, 1997); *see Whaley*, 197 S.W.3d at 672–73 (recognizing that "violations of ordinances a[re] a possible ground for application of the negligence per se doctrine" (citations omitted)).

The Court, however, declines to address Luedtke Trucking's argument—and more broadly, Ms. Steinberg's claim for negligence per se as a whole—for lack of subject matter jurisdiction. Subject-matter jurisdiction, which refers to a federal court's "power to hear a case," *Union Pac. R.R. Co. v. Bhd. of Locomotive Eng'rs & Trainmen*, 558 U.S. 67, 81 (2009) (internal quotation marks and quotation omitted), is "a prerequisite to suit in federal court," *Pugh v. Norman*, No. 3:16-cv-02075, 2017 WL 712751, at *2 (M.D. Tenn. Feb. 23, 2007) (citing *id.*). A federal court has "limited" power to hear a case, because this power originates from only the Constitution and federal statutes. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted).

Under 28 U.S.C. § 1331, a federal court has subject matter jurisdiction over cases in which "federal law creates the cause of action asserted," *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, 136 S. Ct. 1562, 1569 (2016), or in other words, cases in which the claims arise under the United States Constitution, federal laws, or United States treaties, 28 U.S.C. § 1311. In certain circumstances, a federal court can exercise subject matter jurisdiction over claims not arising under a federal law, or in other words, state-law claims. Under 28 U.S.C. § 1332, subject matter jurisdiction exists over a state-law claim when the adverse parties are not citizens of the same state and the amount in controversy exceeds $75,000, exclusive of interest and costs.

In the Amended Complaint, Ms. Steinberg invokes § 1332 as the lone basis for the Court's subject matter jurisdiction over this case, styling her claims as state claims, not federal claims. [Am. Compl. ¶ 3]. Despite asserting that her claims arise under state law, she injects a federal issue into her claim for negligence per se because she alleges that Luedtke Trucking breached a duty within the Code of Federal Regulations—rather than within a Tennessee statute or regulation. [*Id.* ¶¶ 17–20]. In this situation, when a plaintiff sows a federal matter into a state-law claim, she is attempting to foot a "slim" pathway into federal court. *Gunn v. Minton*, 568 U.S. 251, 258 (2013). Through this narrow pathway, "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Id.*

Before permitting Ms. Steinberg to continue with her claim, the Court will require her to assuage its concerns about subject matter jurisdiction and show cause by satisfying these four elements. *See Patsy v. Bd. of Regents*, 457 U.S. 496, 525 n.10 (1982) (Powell, J., dissenting) ("[I]t would not simply be wrong but indeed would be an unconstitutional invasion of the powers reserved to the states if the federal courts were to entertain cases not within their jurisdiction[.]" (quotation omitted)); *In re Lewis*, 398 F.3d 735, 739 (6th Cir. 2005) ("The existence of subject matter jurisdiction may be raised . . . *sua sponte* by the court itself." (citation omitted)); *Dillon v. Medtronic, Inc.*, 992 F. Supp. 2d 751, 756 (E.D. Ky. 2014) ("The paradigmatic example of a state claim with an embedded (though not necessarily significant) federal issue is a common-law claim for negligence per se

based on the violation of a federal duty." (citing *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804, 814 (1986))).

Although the Court will keep Ms. Steinberg's claim intact at least until she has had the opportunity to respond to its misgivings about its ability to exercise subject matter jurisdiction, *see Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999) (recognizing that "a plaintiff generally should be given notice and an opportunity to respond prior to the district court's sua sponte dismissal of the complaint" (quotation omitted)), her task is likely to be a redoubtable one if she accepts it, *see Merrell Dow Pharmaceuticals*, 478 U.S. at 814 ("[T]he presence of the federal issue as an element of the state tort is not the kind of adjudication for which jurisdiction would serve congressional purposes and the federal system."); *see also Moore v. Chesapeake & O. Ry. Co.*, 291 U.S. 205, 216–17 (1934) ("The action fell within the familiar category of cases involving the duty of a master to his servant. This duty is defined by the common law, except as it may be modified by legislation. The Federal statute, in the present case, touched the duty of the master at a single point, and, save as provided in the statute, the right of the plaintiff to recover was left to be determined by the law of the state." (quotation omitted)).

**D. Comparative Fault**

Lastly, Luedtke Trucking moves for summary judgment under the doctrine of comparative fault, which it alleges as an affirmative defense. [Def.'s Br. at 21; *see* Answer, doc. 45, ¶ 23 (pleading comparative fault as a defense)]. Under Tennessee's modified comparative fault system, a defendant, even when negligent in causing an injury

18

to a plaintiff, is not liable for damages unless he is more than fifty percent at fault for the injury. *McIntyre v. Balentine*, 833 S.W.2d 52, 57 (Tenn. 1992). Luedtke Trucking claims that "reasonable minds could only conclude that plaintiff was at fault," [Def.'s Br. at 23], but the Court has already determined that the record contains evidence from which a reasonable jury could find that Luedtke Trucking was at fault.

The Court is not willing to weigh this evidence and divine from it whether one party must shoulder equal or greater fault than the other—an act that would usher it precariously close to the jury's province. *See Anderson*, 477 U.S. at 249 (recognizing that the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial"); *Green v. Roberts*, 398 S.W.3d 172, 178 (Tenn. Ct. App. 2012) (stating that the issue of comparative fault is for the jury unless the jury could "only conclude" that the plaintiff's fault equals or exceeds the defendant's fault). The Court therefore declines to jettison Ms. Steinberg's claims based on Luedtke Trucking's defense of comparative fault.

### IV. CONCLUSION

As the movant for summary judgment, Luedtke Trucking does not satisfy its burden, failing to establish that the record is without genuine issues of material fact as to Ms. Steinberg's negligence claim or as to its defense of comparative fault. The Court therefore orders as follows:

1. To the extent that Luedtke Trucking requests summary judgment on Ms. Steinberg's negligence claim, its Motion for Summary Judgment [doc. 63] is **DENIED**.

2. To the extent that Luedtke Trucking requests summary judgment on its defense of comparative fault, its Motion for Summary Judgment [doc. 63] is **DENIED**.

3. To the extent that Luedtke Trucking requests summary judgment on Ms. Steinberg's claim for negligence per se, the Court, on jurisdictional grounds, reserves ruling on this request.

4. Within twenty-one days from the date of this Order, Ms. Steinberg may, if she chooses, show cause as to the Court's ability to exercise subject matter jurisdiction over this claim. Otherwise the Court will dismiss this claim for lack of subject matter jurisdiction.

The Court will enter an order consistent with this opinion.

    **IT IS SO ORDERED.**

    ENTER:

s/ Leon Jordan
United States District Judge