UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
WINCHESTER DIVISION

| RIVKA C. STEINBERG, | ) |
|---|---|
| Plaintiff, | ) |
| v. | ) No. 4:17-CV-9 |
| LUEDTKE TRUCKING, INC., | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

This matter is before the Court on Defendant's Motion for Summary Judgment [doc. 63], Defendant's Brief [doc. 64], Defendant's Statement of Undisputed Facts [doc. 65], Plaintiff's Response [doc. 69], Defendant's Reply [doc. 70], and Plaintiff's Response to Show-Cause Order [doc. 75]. For the reasons herein, the Court will grant Defendant's motion.

### I. BACKGROUND

After attending the Bonnaroo Music and Arts Festival in Manchester, Tennessee, Plaintiff Rivka C. Steinberg traveled with her friends to a truck plaza alongside the interstate. [Pl.'s Dep., doc. 69-1, at 17:2–13].[1] They decided to camp out in a field behind the truck plaza for the night. [*Id.* at 17:12–13]. Ms. Steinberg's friends offered a bottle of

---

[1] Pincites to the record refer to the electronic page numbers.

beer to her, and as she consumed it, she became dizzy, lost control over her body, and blacked out. [*Id.* at 17:13–16; 18:13–19, 22–24].

During that same night, Mr. Randal Luedtke, a commercial truck driver, was en route to Tennessee from Florida, and when he arrived in Tennessee, he pulled his tractor-trailer into the truck plaza in Manchester—the same truck plaza where Ms. Steinberg was present for the night. [Luedtke Dep., doc. 65-1, at 46:15–25; 47:1–8]. He slept for several hours in his truck. [*Id.* at 48:24–25; 49:1–2]. When he woke at 3:00 a.m., he completed paperwork, and around 6:00 a.m., he placed his truck in gear. [*Id.* at 51:3–18]. According to his account, he backed up to reposition his truck into a "nice spot," [*id.* at 51:23],[2] planning to "go inside the truck stop and get some coffee, use the restroom, and do a pre-trip inspection before hitting the road," [Def.'s Undisputed Facts at 2].

The sound of the moving truck stirred Ms. Steinberg to consciousness—at which point she realized that she was not in the field anymore but, somehow, was now lying underneath the rear of Mr. Luedtke's truck. [Pl.'s Dep. at 17:17–18; 20:11–15]. As the truck's rear tire approached her, she was unable to avoid it, and it ran over and mangled her leg. [*Id.* at 17:17–21; 20:11–15, 17–18]. After hearing a noise, Mr. Luedtke looked in his side-view mirror and, for the first time, saw Ms. Steinberg "sitting on the roadway back there, which [he] didn't know was a roadway." [Luedtke Dep. at 52:2–4].[3] He phoned 911, and she was airlifted to a hospital, where she had emergency surgery on her

---

[2] Mr. Luedtke testified that a more attractive parking space had become available in the truck plaza, so he "was just going to move over." [Luedtke Dep. at 24:10–12].

[3] Mr. Luedtke testified that "trucks come around from the tire shop back there." [*Id.* at 21:18–19].

2

leg. [*Id.* at 52:19–24; 53:23; Pl.'s Dep. at 34:21–25; 35:1–9]. She was hospitalized for more than a month. [Pl.'s Dep. at 35:22–25].

Ms. Steinberg now believes that the beer she drank that night might have been laced with a drug, possibly a "roofie." [*Id.* at 18:1–5]. Between drinking the beer and regaining consciousness underneath Mr. Luedtke's truck, she has no memory of anything that happened. [*Id.* at 18:22–24]. She has "no idea" how she went from being in the field to lying under the truck. [*Id.* at 19:3–5]. And on the morning of the incident, she could not locate her friends, who had apparently vanished. [*Id.* at 19:6–18].

Ms. Steinberg now brings suit in this Court against Defendant Luedtke Trucking, Inc., claiming that through Mr. Luedtke, its employee and agent, it had a duty to ensure that "there were no hazards presented to others" before he operated his truck on the morning of the incident. [Am. Compl, doc. 43, ¶ 8]. Her claims against Luedtke Trucking include one for negligence and one for negligence per se. [*Id.* at 3–4]. Luedtke Trucking now moves for summary judgment on both claims.

As the parties are aware, the Court has already ruled in part on Luedtke Trucking's request for summary judgment. [Mem. Op., doc. 73; Order, doc. 74]. The Court declined to enter summary judgment on Ms. Steinberg's negligence claim, but it reserved ruling as to whether summary judgment was appropriate on Ms. Steinberg's claim for negligence per se, citing jurisdictional grounds. [Mem. Op. at 15–18]. Although this claim resounds in state law, it has conterminous foundations in federal law because Ms. Steinberg asserts that Luedtke Trucking breached a duty within the Code of Federal Regulations—rather than within a Tennessee statute or regulation. [Am. Compl., doc. 43, ¶¶ 17–20]. Because

3

this hybrid claim contains a federal question—whether the Code of Federal Regulations imposes a legal duty on Mr. Luedtke—the Court raised a sua sponte inquiry into its ability to exercise subject matter jurisdiction over this claim, and it then ordered and awaited a response to its concerns from Ms. Steinberg. *See Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 814 (1986) ("[T]he presence of the federal issue as an element of the state tort is not the kind of adjudication for which jurisdiction would serve congressional purposes and the federal system."); *Dillon v. Medtronic, Inc.*, 992 F. Supp. 2d 751, 756 (E.D. Ky. 2014) ("The paradigmatic example of a state claim with an embedded (though not necessarily significant) federal issue is a common-law claim for negligence per se based on the violation of a federal duty." (citing *id.*)).

With a state claim like this one, federal jurisdiction "will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013). But the federal courts have only applied these four requirements to cases in which federal question jurisdiction is the stated basis for subject matter jurisdiction. *See id.* at 256–59; *Dillon*, 992 F. Supp. 2d at 754–58. With this fact in mind and in light of Ms. Steinberg's response, the Court lacks precedent to extend *Gunn*'s requirements to a case like this one—in which the Court's lone jurisdictional foothold is diversity jurisdiction and not federal question jurisdiction. *See Charvat v. NMP, LLC*, 656 F.3d 440, 446 (6th Cir. 2011) ("If there is diversity jurisdiction, the district court may not decline to decide the state-law claims."); *Mitchell v. Lemmie*, 231 F. Supp. 2d 693, 699 n.2 (S.D. Ohio 2002) ("To make clear, a state law claim which 'arises under' federal law

4

remains a state law claim. . . . Unlike claims which are completely preempted . . . they are not converted into claims under a federal statute."); *see also Fuller v. BNSF Ry. Co.*, 472 F. Supp. 2d 1088, 1095 (S.D. Ill. 2007) ("[A] tort case in which a violation of a federal regulation is asserted merely as an element of a negligence claim is unmistakably of the kind that, absent federal subject matter jurisdiction *in diversity*, belongs in state court[.]" (emphasis added) (citation omitted)).

Having harbored some initial misgivings, the Court made the requisite inquiry into its ability to exercise subject matter jurisdiction over Ms. Steinberg's claim for negligence per se. *See Ky. Press Ass'n v. Kentucky*, 454 F.3d 505, 508–09 (6th Cir. 2006) (observing that courts have "an independent duty 'to inquire *sua sponte* whenever a doubt arises as to the existence of federal jurisdiction'" (quotation omitted)). It is now satisfied and ready to address the remainder of the parties' arguments as to summary judgment.

## II. LEGAL STANDARD

Summary judgment is proper when the moving party shows, or "point[s] out to the district court," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), that the record—the admissions, affidavits, answers to interrogatories, declarations, depositions, or other materials—is without a genuine issue of material fact and that the moving party is entitled to judgment as a matter of law, Fed. R. Civ. P. 56(a), (c). The moving party has the initial burden of identifying the basis for summary judgment and the portions of the record that lack genuine issues of material fact. *Celotex*, 477 U.S. at 323. The moving party discharges that burden by showing "an absence of evidence to support the nonmoving party's" claim

5

or defense, *id.* at 325, at which point the nonmoving party, to survive summary judgment, must identify facts in the record that create a genuine issue of material fact, *id.* at 324.

Not just any factual dispute will defeat a motion for summary judgment—the requirement is "that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it may affect the outcome of the case under the applicable substantive law, *id.*, and an issue is "genuine" if the evidence is "such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In short, the inquiry is whether the record contains evidence that "presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. When ruling on a motion for summary judgment, a court must view the facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. A court may also resolve pure questions of law on a motion for summary judgment. *See Hill v. Homeward Residential, Inc.*, 799 F.3d 544, 550 (6th Cir. 2015).

### III. ANALYSIS

Luedtke Trucking moves for summary judgment on Ms. Steinberg's claim for negligence per se—a doctrine under which a defendant can be negligent as a matter of law, or per se, for violating a statute that promotes safety. *See Rains v. Bend of the River*, 124 S.W.3d 580, 590 (Tenn. Ct. App. 2003) ("The effect of declaring conduct negligent

6

per se is to render the conduct negligent as a matter of law. Thus, a person whose conduct is negligent per se cannot escape liability by attempting to prove that he or she acted reasonably under the circumstances." (citations and footnote omitted)). A claim for negligence per se has three elements: (1) a violation of a statutory or regulatory duty of care; (2) a showing that the statute or regulation was meant to benefit and protect the injured party; and (3) proximate cause. *Chase, Jr. v. Physiotherapy Assocs., Inc.*, No. 02A01-9607-CV-00171, 1997 WL 572935, at *5 (Tenn. Ct. App. Sept. 5, 1997).

Ms. Steinberg brings her claim for negligence per se under the Code of Federal Regulations—specifically the Federal Motor Carrier Safety Regulations ("FMCSR"), 49 C.F.R. §§ 390.42, 392.2, 392.7, 392.9, 396.3, 396.13. [Am. Compl. ¶¶ 16–20]. In these regulations, the Federal Motor Carrier Safety Administration has promulgated various requirements relating to the operation and inspection of commercial motor vehicles. In pursuing summary judgment on this claim, Luedtke Trucking challenges whether "such regulations establish a duty" that extends to it. [Def.'s Br. at 21]. The Court sees no need to examine Luedtke Trucking's argument beyond this simple assertion, which is undoubtedly accurate.

Although a violation of a regulation is "a possible ground for application of the negligence per se doctrine" under Tennessee law, *Whaley v. Perkins*, 197 S.W.3d 665, 673–74 (Tenn. 2006) (citation omitted), the regulation must "expressly grant[] [a party] a private right of action for negligence per se," *Thomas & Assocs., Inc., v. Metro. Gov't of Nashville*, No. M2001-00757-COA-R3-CV, 2003 WL 21302974, at *10 (Tenn. Ct. App. June 6, 2003) (citing *Premium Fin. Corp. of Am. v. Crumps Ins. Servs. of Memphis, Inc.*,

7

978 S.W.2d 91, 94 (Tenn. 1998); *Reed v. Alamo Rent-a-Car, Inc.*, 4 S.W.3d 667, 690 (Tenn. Ct. App. 1999))). Tennessee courts have stated that they will not "casually engraft private rights of enforcement onto government regulation statutes absent some clear indication that the legislature intended that the statutes should be enforced by private right of action." *Id.* (citing *Premium Fin. Corp.*, 978 S.W.2d at 94; *Reed*, 4 S.W.3d at 690); *see Premium Fin. Corp.*, 978 S.W.2d at 94 ("We do not find such clear intention in the statute under review.").

The FMCSR does not create a private right of action—the absence of which renders it incapable of operating as a platform for Ms. Steinberg's claim for negligence per se. *See Alexander v. Sandoval*, 532 U.S. 275, 291 (2001) ("[I]t is most certainly incorrect to say that language in a regulation can conjure up a private cause of action that has not been authorized by Congress. Agencies may play the sorcerer's apprentice but not the sorcerer himself."); *Smith v. Dearborn Fin. Servs., Inc.*, 982 F.2d 976, 979 (6th Cir. 1993) ("[F]ederal regulations cannot themselves create a cause of action; that is a function of the legislature." (citation omitted)); *see also Harris v. FedEx Nat'l LTL, Inc.*, 760 F.3d 780, 784 n.2 (8th Cir. 2014) ("We doubt there is a federal private right of action for a violation of the FMCSR." (citation omitted)); *Leon v. FedEx Ground Package Sys. Inc.*, No. CIV 13-1005 JB/SCY, 2016 WL 836980, at *11 (D.N.M. Feb. 16, 2016) ("[T]here is no federal private right of action allowing personal injury or wrongful death plaintiffs to hold defendants liable for violations of the FMCSR."); *Ware v. Transp. Drivers*, 30 F. Supp. 3d 273, 276 (D. Del. 2014) ("To the extent that plaintiff asserts a private cause of

action under [the FMCSR] . . . the claim[] fail[s]." (citation omitted)).[4] Luedtke Trucking is therefore entitled to summary judgment on Ms. Steinberg's claim for negligence per se.

## IV. CONCLUSION

Luedtke Trucking satisfies its burden for summary judgment on Ms. Steinberg's claim for negligence per se. The Court orders as follows:

1. Luedtke Trucking's Motion for Summary Judgment [doc. 63] is **GRANTED**, but only as to Ms. Steinberg's claim for negligence per se.
2. Ms. Steinberg's claim for negligence per se is **DISMISSED**.
3. The Court's Order to Show Cause [doc. 74] is **DISCHARGED**.

The Court will enter an order consistent with this opinion.

**IT IS SO ORDERED.**

ENTER:

s/ Leon Jordan
United States District Judge

---

[4] Some courts have grappled with the issue of whether 49 U.S.C. § 14704(a), which parties have argued is the FMCSR's statutory analog, creates a private right of action in conjunction with the FMCSR. *See Owner-Operator Indep. Drivers Ass'n v. New Prime, Inc.*, 192 F.3d 778, 783–85 (8th Cir. 1999); *Schramm v. Foster*, 341 F. Supp. 2d 536, 547 (D. Md. 2004). But Ms. Steinberg has not alleged or argued that her claim in any way springs from 49 U.S.C. § 14704(a). She maintains only that it arises under the FMCSR.